Gloria OLIVER, Plaintiff,

v.

BOARD OF EDUCATION OF the CITY OF NEW YORK, Board of Elections of the City of New York, Herman Badillo, individually and as Borough President of the Borough of Bronx, Bronx County, Abraham Stark, individually and as Borough President of the Borough of Brooklyn, Kings County, Percy E. Sutton, individually and as Borough President of the Borough of Manhattan, New York County, Sidney Leviss, individually and as Borough President of the Borough of Queens, Queens County, Robert T. Connor, individually and as Borough President of the Borough of Richmond, Richmond County, and Nelson A. Rockefeller, individually and as Governor of the State of New York, Defendants.

No. 69 Civ. 2130.

United States District Court
S. D. New York.

Nov. 20, 1969.

Morton P. Cohen, Brooklyn, N. Y., Brooklyn Legal Services Corporation B, South Brooklyn Branch; John DeWitt Gregory, New York City, Community Action for Legal Services, for plaintiff; Jethro M. Eisenstein, Brooklyn, N. Y., John C. Gray, Jr., New York City, Jane R. Stern, Frederick H. Weisberg, Brooklyn, N. Y., of counsel.

J. Lee Rankin, Corporation Counsel, New York City, for Board of Education et al.; Robert E. Hugh, Asst. Corporation Counsel, of counsel.

Louis J. Lefkowitz, Atty. Gen. of State of New York, Albany, N. Y., for defendant Nelson A. Rockefeller; Daniel M. Cohen, Asst. Atty. Gen., New York City, of counsel.

## OPINION

McLEAN, District Judge.

This is an action by a resident and registered voter of Kings County, New York, seeking a judgment declaring that Section 11(1) of Chapter 330 of the New York Laws of 1969 and Section 2590–b(1) (a) of the Education Law of New York, McKinney's Consol. Laws, c. 16 are unconstitutional, on the ground that they deny plaintiff the equal protection of the laws, in violation of the Fourteenth Amendment. Plaintiff also asks this court to enjoin the enforcement of those sections.

The action is brought under the civil rights act, 42 U.S.C. § 1983. This court's jurisdiction is based upon 28 U.S.C. §§ 1343(3) and (4).

The statutes in question pertain to the board of education of the city school district of the city of New York. Section 11 of Chapter 330, which became effective on April 30, 1969, provides for an interim board of education to serve until a permanent board is elected. Subdivision 1 of Section 11 provides that the interim board shall consist of five members. Each borough president is to appoint one member.

Section 4 of Chapter 330 adds a new article 52–A to the Education Law. This article, as far as material here, will not take effect until February 16, 1970. Section 13. Section 2590–b(1)(a) of that article provides that the permanent board shall consist of seven members, of whom two are to be appointed by the mayor. The remaining five are to be elected, one from each county in the city of New York.

Plaintiff originally moved for a preliminary injunction. By order dated

August 4, 1969, I directed that the action be set down for trial on October 1, 1969, and that, pursuant to Rule 65(a)(2), the hearing on the motion for a preliminary injunction would be consolidated with the trial. Thereafter the parties agreed that there was no material issue of fact to be tried and that the questions of law which the action raises could appropriately be decided on a motion for summary judgment. Plaintiff thereupon withdrew her request for a preliminary injunction and moved for summary judgment. Defendants board of education, board of elections, and the five borough presidents, have cross-moved for summary judgment in their favor. Defendant Rockefeller, sued individually and as Governor of the State of New York, has separately moved to dismiss the action on the ground, among others, that he is not a proper party defendant.[1]

■ The parties agree that the questions presented can properly be decided by a single district judge. A three-judge court is not required since the statutes under attack are not statutes of general statewide application but relate only to the city of New York. Moody v. Flowers, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed. 2d 643 (1967)

■ Defendant Rockefeller's separate motion to dismiss may be quickly disposed of. He is not a proper party defendant here because there is no showing that he has any special relation to the enforcement of the statutes under attack. There is no need to join him as a defendant in order to raise the question of the constitutionality of the statutes. Fitts v. McGhee, 172 U.S. 516, 19 S.Ct. 269, 43 L.Ed. 535 (1899); Camacho v. Rogers, 199 F.Supp. 155 (S.D.N.Y. 1961); Coon v. Tingle, 277 F.Supp. 304 (N.D.Ga.1967).

Plaintiff concedes the correctness of this proposition and offers no opposition to this defendant's motion to dismiss the action as against him, both individually and as governor. Accordingly, that motion is granted.[2]

■ I turn now to the merits of plaintiff's motion. It is conceded that the five boroughs of New York City, which are also five separate counties, are unequal in population. The only figures furnished the court are those of the 1960 census which are as follows:

| | |
|---|---|
| New York County (Manhattan) | 1,698,281 |
| Bronx County (Bronx) | 1,424,815 |
| Kings County (Brooklyn) | 2,627,319 |
| Queens County (Queens) | 1,809,578 |
| Richmond County (Richmond) | 221,991 |

Granted that these figures probably have changed somewhat since 1960, there is no doubt that Kings County (Brooklyn) is still substantially larger in population than the other counties, and that Richmond County is still substantially smaller.

Plaintiff bases her claim of denial of equal protection squarely upon the "one man, one vote" principle. See Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.

1. Another action, Spencer et al. v. Sutton et al., 69 Civ. 2183, was begun at approximately the same time against the same parties, with the exception of Governor Rockefeller, plus other defendants not named in *Oliver*. The second count in the *Spencer* two-count complaint presented the same questions as in *Oliver*. By stipulation, the first count in *Spencer* was severed for subsequent disposition. The *Spencer* plaintiffs then moved for summary judgment on their second count. Defendants board of education, et al., cross-moved for summary judgment as in *Oliver*. The attorneys for *Oliver* have taken the lead in briefing and arguing the motions. The decision in *Oliver* will determine the second count in *Spencer* as well.

2. Inasmuch as this action brings into question the constitutionality of a state statute, the Attorney General, pursuant to Section 71 of the Executive Law, McKinney's Consol.Laws, c. 18, has requested leave to file a brief on the merits in support of the statutes. Plaintiff does not oppose that request. Accordingly, I have granted leave and have considered the Attorney General's brief along with the briefs of the parties.

Ed.2d 663 (1962); Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). Her position is that as a voter of Kings, the most populous county, her vote carries less weight than the vote of a resident of any of the other counties, thereby subjecting her to the "invidious discrimination" which the law condemns. Plaintiff asserts this contention against both sections of Chapter 330 which she attacks, i. e., Section 11(1) of the Act, pertaining to the interim board, and Section 2590-b(1) (a) of Article 52-A, which pertains to the permanent board. She sees no difference in principle between the two.

To my mind there is a significant difference. Under Section 11(1) the interim board is appointed, not elected. The Supreme Court has said, in Sailors v. Board of Education of the County of Kent, 387 U.S. 105, 111, 87 S.Ct. 1549, 1553, 18 L.Ed.2d 650 (1967):

> "Since the choice of members of the county school board did not involve an election and since none was required for these nonlegislative offices, the principle of 'one man, one vote' has no relevancy."

That decision is controlling here, as far as the interim board is concerned.

Plaintiff points to the fact that under the statute, each of the five members of the interim board is appointed by a borough president. The voters of the borough elect the borough president. As a voter of Brooklyn (Kings County), plaintiff's vote for borough president of Brooklyn has less importance than the vote of a resident of Staten Island for borough president of Richmond. Therefore, plaintiff argues she has less voice in choosing the man who appoints a member to the interim board than the resident of Staten Island has in choosing the man who appoints another member, from which it is said to follow that her

franchise has been diluted, indirectly if not directly.

The cases have not carried the one man, one vote doctrine this far. On the contrary, Sailors is authority for the proposition that it should not be so extended. The county school board there involved was chosen by delegates selected by local school boards, one delegate from each local board. The local boards were elected from districts which varied in population. The parallel between that system and the method of selecting the interim board in the present case is obvious. The Supreme Court's decision in Sailors that the equal protection clause was not violated by that system disposes of the present plaintiff's claim of indirect dilution. I hold therefore that the interim board is validly constituted.

■ The permanent board is another matter. Under Section 2590-b(1) (a), five members of that seven-member board are to be elected, one from each county. The other two are to be appointed by the mayor. It is clear beyond question that plaintiff's vote for the Kings County member will carry less weight than the votes of residents of other counties for the representatives of those counties. Unlike the interim board, we are concerned here with a vote, and the vote will not be one which conforms to the one man, one vote principle. Hence, the only question is whether that principle applies to the selection of this board of education. If it does, there is no doubt that the statute violates it.[3]

There is no Supreme Court case which has actually held that the principle applies in this situation. But there is language in the Supreme Court cases which suggests that it does. That langauge, dictum though it may be, is at least a persuasive indication of the Supreme Court's views.

Thus, in Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45

---

3. The fact that this section will not take effect until February 16, 1970, does not prevent this court from considering its constitutionality now. The law is on the books. No purpose would be served in postponing consideration until it becomes effective. On the contrary, it would be unwise to do so.

(1968), in which the Court held that the doctrine of Reynolds v. Sims applied to a board of county commissioners called the "Midland County Commissioners Court," the Court stated that the question before it was "whether the Fourteenth Amendment likewise forbids the election of local government officials from districts of disparate population." (390 U.S. at 478, 88 S.Ct. at 1117.) In answering this question in the affirmative, the Court said:

> "If voters residing in oversize districts are denied their constitutional right to participate in the election of state legislators, precisely the same kind of deprivation occurs when the members of a city council, *school board,* or county governing board are elected from districts of substantially unequal population." 390 U.S. at 480, 88 S.Ct. at 1118 (emphasis added).

Subsequent to *Avery*, in the recent case of Kramer v. Union Free School District No. 15, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969), the Supreme Court held that Section 2012 of the New York Education Law governing the method of electing school boards in certain districts in the state was unconstitutional because it denied plaintiff, a resident of one of those districts, equal protection of the laws. It is true that the case involved, not a dilution of plaintiff's right to vote for school board members, but a complete denial of that right. The statute restricted voting, in substance, to owners of real property and parents of school children. But the extent of the impairment of plaintiff's franchise is immaterial for present purposes. The point is that the Court applied the principle of equal franchise to an election for members of a school board. Indeed, it could almost be said that the Court took it for granted that the principle was applicable, although it did point out, almost in passing, that:

> "Although the New York State Department of Education has substantial responsibility for education in the State, the local school districts maintain significant control over the ad-

ministration of local school district affairs." 395 U.S. at 623, 89 S.Ct. at 1887.

Certainly the same comment could be made with respect to the school board involved here.

In addition to these Supreme Court cases, there are at least two decisions of the lower federal courts, both cited in Avery v. Midland County, *supra*, 390 U.S. at 479 nn. 3 & 4, 88 S.Ct. 1114, which have invalidated state statutes providing for the election of school board members from districts of unequal population. Delozier v. Tyrone Area School Board, 247 F.Supp. 30 (W.D.Pa.1965); Strickland v. Burns, 256 F.Supp. 824 (M.D.Tenn.1966). See also Meyer v. Campbell, 260 Iowa 1346, 152 N.W.2d 617 (1967).

Another case is now awaiting decision in the Supreme Court which bears upon this problem, Hadley v. Junior College District of Metropolitan Kansas City. This is an appeal from a decision of the Supreme Court of Missouri, reported in 432 S.W.2d 328 (1968), probable jurisdiction noted, 393 U.S. 1115, 89 S.Ct. 991, 22 L.Ed.2d 120 (1969). It upheld the validity of a Missouri statute governing the method of selection of trustees of a junior college district as against a challenge based upon the one man, one vote principle. The appeal was argued in the Supreme Court on November 10, 1969. 38 U.S.L.W. 3184 (Nov. 18, 1969).

Much as I would like to defer decision of the present case until I could have the benefit of the forthcoming decision in *Hadley*, I cannot do so in fairness to all concerned, in view of the urgency of the situation now confronting the public schools of New York City. The decision of the Missouri court, of course, is not binding upon me. Conceivably, it is distinguishable on its facts from the present case. Its fundamental point of view, however, seems to me to be at variance with the federal decisions on the subject. I decline to follow it.

I am satisfied that the trend of the federal decisions points to the extension

of Reynolds v. Sims to elections for members of school boards. I see nothing in the powers of this particular permanent city board which would justify this court in ignoring that trend. The board has broad powers to run the city schools. The fact that the statutory scheme contemplates a certain amount of autonomy in the boards of the community districts does not deprive the city board, with which we are here concerned, of overall control. The fact that the city board has no taxing power does not seem to me to be crucial. The same was true of the board in *Strickland,* which a three-judge court nevertheless held to be invalidly constituted.

It is unnecessary to expand this opinion by a reiteration of the reasons for the one man, one vote doctrine. They have been fully explained in the Supreme Court cases. The only question here is whether the doctrine applies to the permanent city board created by this statute. I believe that it does. Accordingly, I hold that the method of election specified in Section 2590–b(1) (a) is invalid in that it deprives plaintiff of the equal protection of the laws guaranteed to her by the Fourteenth Amendment. A declaratory judgment to that effect will be entered.

Under the statute, the permanent city board is to be elected on the first Tuesday of May 1970. The successful candidates are to take office on July 1, 1970. I will not at this time issue an injunction against the holding of that election. The legislature of New York should be afforded an opportunity to amend the statute in order to comply with constitutional requirements. The court will retain jurisdiction of this action so that if no such amendment is forthcoming, application may be made to the court for appropriate relief.

*See* Delozier v. Tyrone Area School Board, *supra;* Strickland v. Burns, *supra.*

Plaintiff's motion for summary judgment is granted to the extent indicated above with respect to the permanent city board of education. It is denied with respect to the interim board. Defendants' cross-motion for summary judgment is granted with respect to the interim board. It is denied with respect to the permanent city board.

Settle order and judgment on notice.